# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GARY STEVENSON,         )
         )
         Petitioner,       )
         )
v.         )    CASE NO.   12-CV-260-WDS
         )
UNITED STATES of AMERICA,    )    CRIMINAL NO. 07-CR-30178-02-WDS
         )
         Respondent.    )

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1), to which the government filed a response (Doc. 14), and petitioner a reply (Doc. 18). Also before the Court are petitioner's supplemental motion (Doc. 2), and motion for hearing (Doc. 19).[1]

## BACKGROUND

Petitioner was convicted, after a jury trial, of conspiracy to distribute and possession with intent to distribute cocaine and crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (No. 07-CR-30178-02-WDS). On September 4, 2009, petitioner was sentenced to a term of life imprisonment. Petitioner filed a direct appeal of his sentence and conviction, which were affirmed. *See United States v. Stevenson*, 656 F.3d 747 (7th Cir. 2011).

The Seventh Circuit succinctly summarized the extensive facts of this case, as reproduced below:

---

[1] The court liberally construed petitioner's pro se pleadings. *See Smith v. Grams*, 565 F.3d 1037, 1041-42 (7th Cir. 2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In 2007, the Drug Enforcement Administration ("DEA") began investigating a crack and cocaine distribution ring operating out of St. Louis, Missouri. The investigation resulted in the eventual charge of defendant-appellant Gary Stevenson, in a fourth superseding indictment, with one count of conspiring to distribute and possess with the intent to distribute crack and cocaine. An initial indictment had charged Stevenson, Diallo Bohanna and Kimyata Young with one count of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine. A second, third, and fourth superseding indictment were later returned, adding as co-defendants Gloria Stevenson (Gary's mother), Shalonda Byrth, Herman Moore, Gregory Hogan, Dave Kent, Tony Friends, Jr., Pamela Stevenson (Gary's sister), Priscilla Hawkins, Nathaniel Lewis, Ernest Miller, Sr., Kenneth Talton and Jennifer Wilkins. All of the co-defendants pleaded guilty, with the exception of Gary Stevenson, Hogan, Moore, Talton, and Wilkins, who pleaded not guilty and proceeded to trial in the Southern District of Illinois. The trials were severed for all of the defendants except for Hogan and Wilkins who were tried together. This appeal concerns only Gary Stevenson's trial.[FN1]

> FN1. Juries convicted Hogan, Moore, Talton and Wilkins, and they were sentenced, respectively, to life, 360 months', 160 months', and 121 months' imprisonment. All four appealed their convictions to this court. Prior to oral argument, the government confessed error, namely the failure to prove venue in the Southern District of Illinois, to defendants Wilkins and Moore and their convictions were vacated. *See United States v. Wilkins*, No. 09–3457 (January 28, 2011); *United States v. Moore*, No. 09–3731 (January 28, 2011). Following oral argument, the government filed a motion to confess error to defendants Talton and Hogan, again on the basis of the lack of venue in the Southern District of Illinois. We granted that motion and their convictions were likewise vacated. *See United States v. Talton*, No. 09–2751 (April 28, 2011); *United States v. Hogan*, No. 09–3588 (April 28, 2011). Stevenson's appeal is the only one remaining before us.

At Stevenson's trial, in addition to government agents, Friends, Young, Byrth, Miller, Hawkins, Pamela Stevenson, Lewis, Bohanna, and Kent testified. Stevenson did not testify, nor did he call any witnesses in his defense. The government witnesses testified as follows:

Stevenson lived in St. Louis, Missouri and, on a weekly basis from 2003 to 2007 sold large quantities of crack cocaine to Miller and Kent, among others. At times, Miller and Kent would pay cash, and at other times, Stevenson would front them the crack and they would pay Stevenson later. Stevenson also sold large amounts of powder cocaine to Bohanna on a weekly basis from 2006 to 2007, again regularly fronting the drugs to Bohanna.

Beginning in 2006, Stevenson traveled to Kansas City, Missouri to purchase marijuana and cocaine from Tony Friends. Before leaving St. Louis, Stevenson or Moore would remove speakers from his automobile and hide money for the drug purchase inside the speakers, before reinstalling the speakers in a

courier car. Then one of several women (Pamela Stevenson, Byrth, Wilkins, or a woman only identified at trial as "Sweet Pea") would proceed in the money-laden courier car to Kansas City. (Stevenson purposely enlisted women to act as couriers, believing that females were less likely to attract the attention of law enforcement.) Stevenson paid the couriers several hundred dollars per trip, although he never paid his sister Pamela. But, as Pamela testified at trial, she "was more like hook my man up with marijuana and I be cool." And Pamela indirectly benefitted by this arrangement because she and her boyfriend, Talton, resold the marijuana they received from Stevenson out of the residence they shared with Pamela's three children.

In addition to the women couriers, Stevenson also paid Lewis to drive a "trail car" during the round trips to Kansas City. As a trail car driver, Lewis was responsible for keeping in contact with the couriers en route and for watching out for any law enforcement presence. And if there were any problems, he was to contact Stevenson and inform him of the difficulties.

Sometimes, though, Stevenson himself would drive the trail car with a friend or a girlfriend. Kimyata Young testified that she went with Stevenson to Kansas City on one occasion, although she claimed she did not know the true purpose of the trip at first—she thought she was going shopping. In fact, when Young first met him, Stevenson told her that he was a police officer who worked for the Drug Task Unit. But she soon learned the truth. Notwithstanding the fact that Young was well educated (she had a Master's degree and was a licensed clinical social worker) and gainfully employed (making in the mid-$30,000), she not only continued to associate with Stevenson, but also helped him by storing cocaine and marijuana at her home.

At trial, the couriers and trail-car drivers testified that when they arrived in Kansas City, they would go to Friends' home. There, they would back the courier car into Friends' garage and then wait for Stevenson and Friends, and sometimes help them, to remove the drug money from the speakers and replace it with cocaine and/or marijuana. Friends testified that he served as a middleman for the transaction and that the drugs were supplied by an individual from Mexico named Ramone. Ramone was also present on several occasions during the drug exchanges.

After packing the courier car with the drugs, the courier would return to St. Louis, with Stevenson or others following in the trail car. Most of the time when they arrived the courier car would be taken to the home of Stevenson's mother. There Stevenson, Moore, or Talton would remove the speaker box and bring it into the kitchen, where it would be unloaded. On a few occasions, Stevenson stored the cocaine at Young's home; Stevenson would later call Young and tell her to bring it to his mother's house. Once the cocaine was unloaded in the kitchen, Stevenson would either break the cocaine into smaller packages and resell it or cook it into crack and then sell the crack. Stevenson sold the cocaine and crack to several regular customers, including, as noted above, Bohanna, Miller and Kent, oftentimes fronting the drugs to these individuals. The couriers

and trail-car drivers often witnessed both the crack cooking and the cocaine and crack sales.

The DEA discovered Stevenson's drug operation through its investigation of Bohanna's East St. Louis, Illinois crack dealing. After conducting several controlled purchases of crack from Bohanna, the DEA arrested Bohanna in late August 2007. Following his arrest, Bohanna agreed to cooperate with the DEA and fingered Stevenson as his source. Bohanna also agreed to call Stevenson and arrange to purchase additional cocaine, which he did.

Unbeknownst to Stevenson, DEA agents were watching him the evening he was scheduled to meet Bohanna. After observing Stevenson enter Young's residence, officers directed Bohanna to call Stevenson and tell Stevenson that he was in the St. Louis area and ready to meet. In response to Bohanna's call, Stevenson told Bohanna to meet him in the area of Riverview and Broadway. Stevenson and Young then left Young's residence, with Stevenson carrying a small white bag. The duo originally headed toward the Riverview/Broadway area, but they never finished the trip; instead they turned around and headed back to Young's home. DEA agents then attempted to arrest Stevenson, but he drove off, leading agents on a high-speed chase. Stevenson evaded police and disappeared for several months. During Stevenson's months in hiding, he changed the voicemail message on his cell phone directing callers to DTA (which in text-talk means "Don't Trust Anyone") and telling them to dump their telephones. Stevenson also left a message for one of the DEA agents, taunting him, as the agent explained at trial, by saying: "[t]hat it was my job to catch him and it was his job to run, bitch."

While Stevenson was on the run, the government gathered evidence. They immediately obtained a search warrant for Young's home and inside recovered a bowl of powder cocaine inside the refrigerator, three bags of crack cocaine underneath the kitchen sink, three scales in the kitchen, and two kilo wrappers in the kitchen trash. Agents also recovered a total of thirteen grams of crack cocaine and 231 grams of powder cocaine. Agents also interviewed friends and associates of Stevenson and obtained statements from several who agreed to cooperate with the government. Stevenson was eventually arrested in early 2008.

Based on the above evidence, a jury convicted Stevenson of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine.

*Stevenson*, 656 F.3d at 748-50.

The Seventh Circuit also pointed out a noteworthy matter: that four of Stevenson's co-conspirators were eventually acquitted, after the government conceded error regarding venue with respect to these defendants. This Court notes, however, the Seventh Circuit's comment specifically distinguishing petitioner's case from his acquitted co-conspirators:

Stevenson's trial, which was the first of four, differed significantly from those for the co-conspirators. In Stevenson's trial the government called Bohanna as a witness and he provided the necessary link to the Southern District of Illinois, testifying that Stevenson fronted him crack[2] cocaine (thus making him a member of the conspiracy, *see United States v. Stott*, 245 F.3d 890, 903 (7th Cir. 2001), amended on rehearing in part, 15 Fed.Appx. 355), which Bohanna then sold in East St. Louis, Illinois (thus making venue proper in the Southern District of Illinois. *See United States v. Ochoa*, 229 F.3d 631, 636–37 (7th Cir.2000)). Bohanna was not called to testify in Moore's, Wilkins', Talton's or Hogan's cases, although it is unclear why not. During the opening statement at Stevenson's trial, the prosecutor stated that "Diallo Bohanna is going to tell you in 2006, 2007 he would purchase multiple ounces of cocaine from the Defendant practically weekly. What Diallo Bohanna would do is he would come in this District, this side of the river in Illinois, typically from East St. Louis, drive to St. Louis, and pick up his cocaine from the Defendant, bring it back to this District, turn it into crack, and sell it to his customers for profit. The reason that's important is that's why this case has been indicted in this District, even though most of it takes place in St. Louis. Diallo Bohanna is the link. He's the reason this case has been indicted here in this courtroom today." Bohanna's testimony established proper venue for Stevenson's trial. The record does not show why he did not testify at the trials of the other accused co-conspirators.

*Id*. at 751 n.2.

Petitioner now seeks relief pursuant to 28 U.S.C. § 2255, based upon fourteen (14)

claims. Petitioner makes the following thirteen (13) claims of ineffective assistance of counsel:

(1) failure to move for judgment of acquittal at the close of the government's case and at the

conclusion of trial; (2) failure of appellate counsel to argue on appeal that the government failed

to prove an "agreement" beyond a reasonable doubt; (3) failure to move for judgment of

acquittal based on lack of venue; (4) failure to challenge multiple conspiracies or to request a

---

[2]  In his reply brief (Doc. 18), petitioner claims that the Seventh Circuit made a "grave typographical error" in its Order when it stated that petitioner fronted "crack" cocaine to Bohanna, because, petitioner claims, there is no testimony or evidence that this occurred. At petitioner's trial, Bohanna, in fact, testified that he frequently bought *powder* cocaine from the petitioner, and that petitioner would front the *powder* cocaine to him. The Seventh Circuit's Order had accurately cited the trial testimony earlier in its Order and had accurately cited the prosecutor's opening statement, reflecting its awareness and understanding of the actual trial testimony and evidence. The fact that the Court's footnote said "crack" instead of "powder" does not, in any way, affect the outcome of the Court's analysis. The important point was the link Bohanna provided to the Southern District of Illinois through petitioner's fronting him cocaine, which Bohanna later sold as either powder or crack cocaine.

jury instruction on multiple conspiracies; (5) failure to challenge the government's introduction of marijuana evidence at trial; (6) failure to challenge the government's amendment of the indictment in it's closing argument; (7) failure to request a limiting instruction regarding the marijuana evidence; (8) failure to raise a Fifth Amendment violation on direct appeal; (9) failure to object to the admission of a recording at trial; (10) failure to object to the government's use of the contents of the recording in its closing arguments; (11) failure to consult with petitioner before trial to learn the facts of the case and prepare a proper defense; (12) failure to argue that the government created an impermissible variance in the venue alleged in the indictment; and (13) failure to challenge, at the close of the government's case, that the government created an impermissible variance from the allegations in the indictment and the proof at trial. Petitioner also raises a claim that he is "actually innocent," because the government failed to prove an essential element of the crime beyond a reasonable doubt.

## <u>LEGAL STANDARD</u>

Relief under § 2255 is "reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)). Section 2255 requires the court to vacate, set aside, or correct the sentence of a prisoner in custody if the Court finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A § 2255 motion "can *not* raise (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not

6

raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). Section 2255 is "neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Thus:

> [a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* from the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

*Prewitt*, 83 F.3d at 816.

Ineffective assistance of counsel claims, however, have been identified as generally raised and considered on collateral review, where a complete record can be developed. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005). Defendant bears a heavy burden to establish ineffective assistance of counsel. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). These claims are evaluated under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984)). Petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant in such a way that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 695. The Court is not required to analyze both the performance and prejudice prong, because the failure to satisfy either prong is fatal to the claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993); *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

To show that counsel's performance fell below an objective standard of reasonableness, a petitioner must identify "acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (internal quotations omitted).

To meet the prejudice prong, a petitioner need only show a reasonable probability that counsel's conduct altered the outcome, or, in other words, a probability sufficient to undermine confidence in the outcome. *McElvaney v. Pollard*, --- F.3d ---, No. 12-2357, 2013 WL 4423669, at *5 (7th Cir. Aug. 20, 2013).

## ANALYSIS[3]

### I.      Claims for Relief

**a.   (1) Failure to move for judgment of acquittal at the close of the government's case and at the conclusion of trial; (2) failure of appellate counsel to argue on appeal that the government failed to prove an "agreement" beyond a reasonable doubt; and "actual innocence" based on the government's failure to prove an essential element of the crime beyond a reasonable doubt.**

Petitioner claims that trial counsel was ineffective for failing to move for a judgment of acquittal at the close of the government's case in chief, and after trial, on the basis that the evidence was insufficient to prove that he entered into an "agreement," which the government was required to prove in order to prove a conspiracy. Petitioner also argues that appellate counsel was ineffective for failing to raise this issue on appeal. Finally, petitioner claims that because the government did not prove an "agreement" beyond a reasonable doubt, he is actually innocent.

---

[3]  For purposes of brevity and clarity, the Court will deviate from the numerical order of the claims presented, and group like or related claims together.

Petitioner supports his arguments by asserting that the government did not show that he and Bohanna entered into an agreement because the government failed to introduce evidence that petitioner asked Bohanna to sell cocaine and crack cocaine for him; Bohanna assisted petitioner with distribution of these drugs; they had ever discussed the distribution of these drugs; or, that petitioner knew or intended the powder cocaine sold to Bohanna would be resold, or cooked into crack cocaine to be sold.

The Seventh Circuit, in ruling on petitioner's direct appeal, has already commented on the sufficiency of the evidence to convict him: "the evidence of Stevenson's guilt was overwhelming. Numerous members of the conspiracy, serving in all roles—supplier, courier, trail-car driver, and purchaser—testified at length about the scope of operations of the conspiracy." 656 F.3d at 753. Further, the Court of Appeals commented, "the overwhelming evidence established the conspiracy charged in the indictment—conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine." *Id*. at 753-54.

The Court even addressed the evidence with respect to Bohanna specifically:

> [i]n Stevenson's trial the government called Bohanna as a witness and he provided the necessary link to the Southern District of Illinois, testifying that Stevenson fronted him crack cocaine (thus making him a member of the conspiracy, *see United States v. Stott*, 245 F.3d 890, 903 (7th Cir. 2001), amended on rehearing in part, 15 Fed.Appx. 355), which Bohanna then sold in East St. Louis, Illinois (thus making venue proper in the Southern District of Illinois. *See United States v. Ochoa*, 229 F.3d 631, 636-37 (7th Cir. 2000)).

*Id* at 751 n.2. The *Stott* case affirmed that, in this Circuit, "the repeated 'fronting' of cocaine, alone, has been held sufficient to support the jury's conclusion that the defendant had knowingly joined a distribution conspiracy." *Stott*, 245 F.3d at 903 (internal quotation omitted). As stated above, Bohanna specifically testified at trial that petitioner fronted him cocaine (although the trial

record shows that it was powder cocaine, not crack cocaine, as noted *supra*), and that Bohanna would then sell it in Illinois.

Petitioner seems to believe that the government was required to prove that he had fronted both *powder* and *crack* cocaine to Bohanna to successfully prove the conspiracy. The government was not so required. With respect to petitioner, the trial testimony provided, *inter alia*, that on a weekly basis from 2003-2007 he sold and often fronted crack to Miller and Kent, among others, who would then sell the crack in Missouri, and that, on a weekly basis from 2006 to 2007, he sold and regularly fronted powder cocaine to Bohanna, who would either convert it to crack and then sell it, or sell it in powder form, in the Southern District of Illinois. There was overwhelming evidence that petitioner was guilty of the charged conspiracy, and the testimony at trial regarding petitioner's fronting of cocaine to Bohanna was enough to support the conclusion that the two had knowingly joined a conspiracy. *See Stott*, 245 F.3d at 903. The Seventh Circuit, upon review of appellate counsel's argument that the government offered insufficient evidence to prove that petitioner engaged in a conspiracy to possess and distribute *both crack and cocaine*, specifically stated that the "evidence was sufficient to establish Stevenson's conspiracy to deal in both crack and cocaine." *Stevenson*, 656 F.3d at 753.

At the close of all evidence, petitioner's counsel did in fact move for a directed verdict of acquittal, which the Court denied. (No. 07-CR-30178-WDS-2, Doc. 443). Petitioner's appellate counsel also challenged the sufficiency of the evidence on direct appeal, arguing that the government failed to prove that petitioner conspired with a number of the other purported coconspirators charged in the indictment, which the Court of Appeals rejected. 656 F.3d at 753.

In light of this Court's rulings, the Seventh Circuit's rulings, and the evidence at trial, petitioner cannot show that trial counsel performed in an objectively unreasonable manner for failing to move for acquittal on the basis of the lack of an "agreement" between petitioner and Bohanna, nor can it be said that appellate counsel was deficient for failing to raise this particular issue on appeal. "Because a defendant's lawyer has an obligation to be truthful and forthright with the court, he has no duty to make a *frivolous* argument, and indeed is barred by the rules of professional ethics from doing so." *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (internal quotation and citation omitted).

Even if the Court were to assume that petitioner's trial and appellate counsel's assistance fell below an objective standard of reasonableness by the failures asserted by petitioner, petitioner cannot show prejudice for failing to challenge the sufficiency of the evidence—the Seventh Circuit has already determined that the evidence against petitioner overwhelmingly proved that he was guilty of the charged conspiracy. Accordingly, petitioner's claims of ineffective assistance, on this basis, are **DENIED**.

Regarding petitioner's actual innocence claim, "[w]hen confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict." *House v. Bell*, 547 U.S. 518, 538 (2006). A jury's verdict will be reversed "only when there was 'no basis for a rational factfinder to find all of the essential elements of a crime beyond a reasonable doubt." *United States v. Khilchenko*, 324 F.3d 917, 919 (7th Cir. 2003) (internal quotation omitted). In light of the overwhelming evidence of petitioner's guilt of the charged conspiracy, as well as the Seventh Circuit's determination that the

evidence overwhelming proved that he was guilty, petitioner's claim of actual innocence, is **DENIED**.

> **b.  (3) Failure to move for judgment of acquittal based on lack of venue.**

Petitioner claims that trial counsel was ineffective for failing to move for acquittal at the close of the government's case in chief, on the ground that the government lacked venue in the Southern District of Illinois, because it could not prove that petitioner conspired with Bohanna, the only link to this district.

To begin with, as noted *supra*, the government did sufficiently prove that petitioner and Bohanna conspired to distribute cocaine.   Bohanna testified at trial that petitioner sold cocaine to him, often "fronting" the cocaine, and that Bohanna then sold it in East St. Louis, Illinois. Additionally, the Seventh Circuit has already specifically determined that venue was proper in petitioner's case:

> [i]n Stevenson's trial the government called Bohanna as a witness and he provided the necessary link to the Southern District of Illinois, testifying that Stevenson fronted him crack cocaine (thus making him a member of the conspiracy, *see United States v. Stott*, 245 F.3d 890, 903 (7th Cir. 2001), amended on rehearing in part, 15 Fed.Appx. 355), which Bohanna then sold in East St. Louis, Illinois (**thus making venue proper in the Southern District of Illinois**.   *See United States v. Ochoa*, 229 F.3d 631, 636-37 (7th Cir. 2000)).

*Id.* at 751 n.2 (emphasis added).   The *Ochoa* case provides that: "[t]he Supreme Court recently reaffirmed the settled proposition that for conspiracy charges venue is proper against the defendant in any district where a co-conspirator carried out overt acts even though there was no evidence that the defendant had entered that district or that the conspiracy was formed there."   229 F.3d at 636-37 (internal quotations omitted).   Nothing more is needed beyond Bohanna's testimony to establish venue, and the Seventh Circuit has already made this determination.

Accordingly, petitioner cannot prove that his attorney's assistance fell below an objective

standard of reasonableness for failing to present a frivolous argument to the Court.   Neither can

petitioner show any prejudice for counsel's failure to move for acquittal on this frivolous basis.

Petitioner's claim, on this basis, is **DENIED**.

     **c.** **(4) Failure to challenge multiple conspiracies or to request a jury instruction on multiple conspiracies; (12) failure to argue that the government created an impermissible variance in the venue alleged in the indictment; and (13) failure to challenge, at the close of the government's case, that the government created an impermissible variance from the allegations in the indictment and the proof at trial.**

Petitioner claims that counsel was ineffective for failing to argue that there was a variance

between the single conspiracy charged in the indictment and the multiple conspiracies put forth by

the government, and for failing to request a jury instruction with regard to multiple conspiracies.

Petitioner argues that the evidence at trial showed that there were five (5) distinct conspiracies

between petitioner and: (1) Dave Kent, (2) Ernest Miller Jr., (3) Tony Friends, Shalonda Byrth,

Priscilla Hawkins, Pamela Stevenson, and Nathaniel Lewis, (4) Kimyata Young, and (5) Diallo

Bohanna.   Petitioner claims that counsel should have argued that the government did not show a

single conspiracy, as charged in the indictment, but several conspiracies which did not share a

common goal to distribute cocaine and crack cocaine in the Southern District of Illinois.

On similar bases, petitioner claims that counsel was ineffective for failing to argue that the

government created an impermissible variance in the venue alleged in the indictment when it

presented evidence from Ernest Miller Jr. and Dave Kent to prove the conspiracy, in that neither of

these witness' testimony provided a link to the Southern District of Illinois.   He further asserts

that the government may have proven a conspiracy in the Eastern District of Missouri, but they did

not do so in the Southern District of Illinois, as alleged in the indictment (essentially claiming that

the government proved one conspiracy and not another, and that there was not one encompassing conspiracy with one common purpose).   In a later claim, petitioner claims that counsel was ineffective for failing to raise this impermissible variance argument at the close of the government's case in chief.

> Multiple conspiracies exist when there are separate agreements to effectuate distinct purposes.   The parties involved in a single conspiracy need not know one another or participate in every aspect of the conspiracy . . . .   As long as the evidence demonstrates that the coconspirators . . . knowingly embraced a common criminal objective, this is sufficient to establish the existence of a single overall conspiracy among the coconspirators.

*United States v. Thornton*, 197 F.3d 241, 254 (7th Cir. 1999) (internal citations and quotations omitted).   Where the evidence does not suggest separate schemes with distinct purposes, but rather one agreement with one purpose, i.e., to distribute cocaine and crack, only one conspiracy lies.   "A multiple conspiracies instruction is unnecessary when the evidence reveals the existence of only one conspiracy."   *United States v. Martin*, 618 F.3d 705, 736 (7th Cir. 2010).

To begin with, the Court has already noted, *supra*, that overwhelming evidence of petitioner's guilt with respect to the charged conspiracy was produced at trial and acknowledged by the Court of Appeals, through affirmance of petitioner's conviction.   Further, the Court has noted that venue was proper in this case, a determination that has also, already been affirmed by the Court of Appeals.

In this case, the evidence proved that petitioner was running a drug business, with its common purpose being the distribution and possession with intent to distribute cocaine and crack. The evidence proved that this common purpose was carried out, by a number of individuals in the Eastern District of Missouri and one individual in the Southern District of Illinois.   "The evidence of Stevenson's guilt was overwhelming.   Numerous members of the conspiracy, serving in all

14

roles—supplier, courier, trail-car driver, and purchaser—testified at length about the scope of operations of the conspiracy." *Stevenson*, 656 F.3d at 753. As stated above, the government was not required to show that the parties involved in this single conspiracy knew each other or that they each participated in every aspect of the conspiracy, but merely that there was one agreement with one purpose. The government met this burden in petitioner's case.

In the face of this, petitioner's assertions that he received ineffective assistance based on counsel's failure to raise a "multiple conspiracies" challenge, or to request a jury instruction regarding the same, are without merit. Any such request would have been frivolous, and it cannot be said that counsel's assistance fell below an objective standard of reasonableness for failure to raise frivolous issues. Likewise, an argument that the government created an impermissible variance[4] in the venue alleged in the indictment by presenting evidence of a conspiracy in Missouri but not in Illinois, or moving, on this basis, for acquittal, would have been frivolous. Counsel's assistance did not fall below an objective standard of reasonableness by failing to make these assertions, and petitioner can not show that he was prejudiced as a result. Petitioner's claims, on these bases, are **DENIED**.

> **d. (5) Failure to challenge the government's introduction of marijuana evidence at trial; (6) failure to challenge the government's amendment of the indictment in it's closing argument; (7) failure to request a limiting instruction regarding the marijuana evidence; (8) failure to raise a Fifth Amendment violation on direct appeal.**

Petitioner raises a number of claims of ineffective assistance with respect to the marijuana evidence introduced at trial. First, he asserts that counsel was ineffective for failing to challenge

---

[4] The Court notes that appellate counsel did raise two separate variance claims on appeal: (1) that the government failed to prove that petitioner conspired with a number of the purported coconspirators charged in the indictment; and (2) that the government offered insufficient evidence to prove that petitioner engaged in a conspiracy to distribute both crack and cocaine. The Seventh Circuit rejected both arguments: "the overwhelming evidence established the conspiracy charged in the indictment—conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine. There was no variance." 656 F.3d at 753-54.

the government's introduction of marijuana evidence on Fifth Amendment grounds, instead of on "relevancy" grounds.   Next, he argues that counsel was ineffective for failing to challenge the government's "constructive amendment" of the indictment in its closing arguments, when it asked the jury to consider the marijuana and powder cocaine evidence from witness Tony Friends to find that petitioner was aware of the common purpose of the conspiracy.   Petitioner also argues that counsel was ineffective for failing to request a limiting instruction regarding the marijuana evidence so that the jury could not use the evidence for an improper purpose.

Additionally, petitioner asserts that appellate counsel was ineffective for failing to argue on direct appeal that the government's introduction of the marijuana evidence in its case in chief and closing arguments unconstitutionally "broadened the bases of conviction," and resulted in a constructive amendment of the indictment (Doc. 1-1 at 34).   Petitioner further claims that appellate counsel erred on appeal because, although he made a similar argument with respect to the marijuana issue on 404(b) grounds, he should have based his argument on Fifth Amendment grounds.

On appeal, the petitioner argued "that the district court erred in admitting evidence related to his distribution and use of marijuana" because it was inadmissible "bad acts" evidence under Rule 404(b).   656 F.3d at 750-51.   The Seventh Circuit determined that:

> [w]hether Stevenson preserved the issue and whether the government's violation of Fed.R.Evid. 404(b)'s notice requirement should excuse an insufficient objection to the marijuana evidence, however, is irrelevant because any error was harmless.   *See* Fed.R.Crim.P. 52(a); *United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007) ("Errors do not merit reversal when the government proves that they are harmless, that is, that they did not affect the outcome of the trial.").   The evidence against Stevenson was overwhelming.   Stevenson's supplier, Friends, testified at trial that he supplied Stevenson with huge quantities of cocaine over the years. Several couriers and trail-car drivers also testified, not just about their roles, but also about events they witnessed-Stevenson secreting the money and drugs in the speaker boxes; his cooking of the cocaine into crack; and his weighing, packaging,

and selling large quantities of crack and cocaine out of his mother's house. Additionally, three of Stevenson's regular purchasers, to whom Stevenson fronted the drugs, also testified. Testimony from government agents concerning Stevenson's behavior also bolsters the testimony of the co-conspirators. Specifically, Stevenson led officers on a high-speed chase the evening of the attempted sting operation. After eluding officers, he then taunted them, leaving messages evidencing an awareness of guilt, i.e., it's my job to run and your job to catch me. Stevenson also changed his voicemail message to inform his friends and family members that there was a "snitch" and that they should dump their cell phones and trust no one. For his part, Stevenson called no witnesses and presented no evidence.

Moreover, the references to marijuana, for the most part, were merely repetitive of the references to the charged crack and cocaine—e.g., Stevenson "would come from St. Louis and buy kilograms of cocaine and pounds of marijuana from me." In fact, Stevenson argues on appeal that there was no reason for the additional marijuana evidence to be admitted because it was "entirely cumulative" and that "of the 32 pages of trial testimony where marijuana evidence appears, 27 include the same or substantially similar testimony with respect to cocaine or crack." Appellant Brief at 30. But rather than bolster Stevenson's argument, this redundancy highlights why any error was harmless. It is also wrong to think that a jury would hear the same witnesses testify about marijuana and cocaine and conclude that those witnesses must be truthful regarding the cocaine and crack because they also said that Stevenson had distributed or used marijuana. *See United States v. Persico*, 425 f.2d 1375, 1384 (2d Cir. 1970) ("As the trial judge noted, [the witness'] testimony as to other crimes and criminal propensity was so closely bound up with his directly relevant testimony with regard to the [charged] hijacking that unless the jury believed the relevant testimony it is quite unlikely that it would have been influenced by the accompanying testimony of other crimes."). For all of these reasons, **we conclude that any error related to the admission of testimony concerning marijuana was harmless.**

*Id*. at 751-52 (emphasis added).

In light of the Seventh Circuit's conclusion that any error related to admission of testimony concerning marijuana was harmless, petitioner cannot show that counsel was ineffective based on the sufficiency of his objection to the marijuana evidence, or that appellate counsel was ineffective based on the sufficiency of his argument on appeal, specifically, that the grounds for each should have been based on the Fifth Amendment. Under the circumstances, even if petitioner could show that trial or appellate counsel's assistance fell below an objective standard of reasonableness,

he cannot show prejudice.   In light of the determination that the introduction of the marijuana evidence was harmless, petitioner was not prejudiced by a failure to make one argument instead of another regarding its admission.   Accordingly, petitioner's claims, on these bases, are **DENIED**.

Petitioner's next claim, that the testimony presented in Court, and the government's closing argument constructively amended the indictment, is meritless.   "A constructive amendment to an indictment, and thus a violation of the Fifth Amendment, occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury."   *United States v. Penaloza*, 648 F.3d 539, 546 (7th Cir. 2011) (internal quotation omitted).   "To merit reversal, the constructive amendment must be so serious that a defendant probably would have been acquitted without it."   *Khilchenko*, 324 F.3d at 920.

> A constructive amendment to an indictment: is found where a "complex set of facts" is presented to the jury during the trial which is distinctly different from the set of facts set forth in the charging instrument.   Alternatively, to find a constructive amendment the crime charged in the indictment must be "materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually proved.

*United States v. Ratliff-White*, 493 F.3d 812, 820 (7th Cir. 2007) (quoting *United States v. Kuna*, 760 F.2d 813, 818 (7th Cir. 1985).

Petitioner specifically takes issue with the following comments made by the prosecutor during closing arguments:

> Tony Friends shows that the Defendant was aware of the common purpose of this conspiracy and was a very willing participant.   What did Tony Friends tell us? He told us that the Defendant reached out to him first to get marijuana and then cocaine.   Tony Friends, acting as a broker, got those drugs for the Defendant on numerous occasions.

(No. 07-CR-30178-WDS-2, Doc. 486 at 4). The prosecutor's comments did not broaden the bases of conviction. The mere mention of petitioner's marijuana purchase from Tony Friends, from whom he later bought cocaine, can not possibly be deemed a constructive amendment of the indictment. The marijuana evidence in this case was intertwined with the cocaine and crack evidence, and the prosecutor was merely summarizing the trial testimony which showed that petitioner first bought marijuana from Tony Friends, and then later cocaine. The Seventh Circuit has already determined that the marijuana evidence would not have influenced the jury to believe testimony with respect to the cocaine and crack that it otherwise would not have. Additionally, it cannot be said that absent this comment, petitioner would probably have been acquitted, or that the comment substantially altered the crime charged so that it is impossible to know whether the grand jury would have indicted for the crime actually proved.

Further, the Court instructed the jury on the charges included in the Fourth Superseding Indictment, and provided them with a copy of it. The Fourth Superseding Indictment clearly states the crime charged, and specifically, that the drugs included are "a mixture or substance containing cocaine base, in the form commonly known as 'crack', and cocaine hydrochloride, both being Schedule II controlled substances." (NO. 07-CR-30178-WDS-2, Doc.186 ). It further describes the specific amounts of each involved in the conspiracy. The verdict forms provided to the jury also described only cocaine and crack, as did the separate special verdict forms, one for crack, and one for cocaine, in which the jury found that the government had proved the amounts of cocaine and crack charged in the Fourth Superseding Indictment beyond a reasonable doubt. (NO. 07-CR-30178-WDS-2, Docs. 444-446).

In light of the overwhelming evidence of petitioner's guilt of the conspiracy charged, the Indictment provided to the jury, as well as the specific jury instructions, and verdict forms, which did not include any references to marijuana, but instead, specifically required that the jury find the petitioner guilty of conspiracy to distribute and possess with intent to distribute cocaine and crack, it is clear that the indictment was not constructively amended in this case. Petitioner has not shown that the marijuana evidence presented to the jury or the government's closing argument at trial amount to a "complex set of facts" that is distinctly different from the facts of the charging instrument, or that the crime charged was substantially altered at trial. Counsel's failure to present a frivolous argument that the government had constructively amended the indictment was not objectively unreasonable, and did not prejudice the petitioner. His claim, on this basis, is **DENIED**.

Petitioner's additional claim that counsel failed to request a limiting instruction is belied by the fact that the jury received an "other acts" instruction, which would have covered the evidence relating to petitioner's marijuana use and dealings. Although the instruction did not specifically reference the testimony with respect to marijuana, it did provide that evidence of acts of the defendant other than those charged in the indictment may only be considered for the question of knowledge and intent, and only for this limited purpose. Accordingly, petitioner cannot show that counsel's failure to request a limiting instruction specifically referencing the marijuana evidence was objectively unreasonable, or that he was prejudiced as a result.

Additionally, even assuming that petitioner could somehow show that counsel was ineffective in any of the ways described above, he cannot show that he was prejudiced in light of the rulings by the Court of Appeals that reiterated that the evidence against him was

overwhelming, that it is unlikely that a jury would determine a witness's truthfulness regarding crack and cocaine based on his or her assertions with respect to marijuana, and that the marijuana dealings were so closely intertwined with the cocaine and crack dealings, that unless the jury believed the testimony regarding the cocaine and crack, it is unlikely they would have believed the testimony regarding the marijuana. Accordingly, petitioner's claims on these bases are **DENIED**.

### e. (9) Failure to object to the admission of a recording at trial; (10) failure to object to the government's use of the contents of the recording in its closing arguments.

Petitioner claims that counsel was ineffective for failing to object during trial to the playing of a recording left by petitioner on an Agent's voicemail because the recording was irrelevant, had no probative value with respect to the crime charged, and was only presented to "inflame" the jury. He claims that while the recording was being played, he observed jurors disgustedly looking at him and shaking their heads. Petitioner further claims that counsel was ineffective for failing to object to the government's reference to the contents of the recording during closing arguments.

Petitioner's counsel did in fact object to the government's introduction of the recording at trial, based on the fact that no evidence established that any telephone involved belonged to his client. (NO. 07-CR-30178-WDS-2, Doc. 454 at 24). Counsel's objection was overruled. Petitioner asserts that counsel should have objected on the grounds that the recording was not relevant, and only introduced to inflame the jury. Petitioner's comments on this recording, were probative, however, in that he was taunting officers, after having eluded them on a high-speed chase. According to the Seventh Circuit, the recording "evidenc[ed] an awareness of guilt, i.e., it's my job to run and your job to catch me." 656 F.3d at 752.

The recording was certainly relevant, and, as asserted by the government, tended to prove that petitioner was aware of the illegality of his acts. An objection by counsel on the basis that the recording was merely inflammatory, would have been frivolous, and his failure to present such an objection was not objectively unreasonable. In light of the overwhelming evidence against petitioner, he cannot show that he was prejudiced by counsel's stating an objection to this one piece of evidence on one basis instead of another.

Likewise, petitioner cannot show that counsel's performance was objectively unreasonable for failing to object to the government's use of admitted evidence during closing arguments, nor can he show that he was prejudiced on this basis in light of the overwhelming evidence against him. *See United States v. Pirovolos*, 844 F.2d 415, 427 (7th Cir. 1988) (In the context of assessing a prosecutor's alleged inappropriate comments the Court determined that where the evidence of a defendant's guilt is overwhelming, "[s]uch strong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." (internal quotation omitted)). Petitioner's claims, on these bases, are **DENIED**.

**f.     (11) Failure to consult with petitioner before trial to learn the facts of the case and prepare a proper defense.**

Petitioner claims that counsel was ineffective for failing to consult with petitioner before trial to learn the facts of the case and prepare a proper defense. Petitioner claims that, prior to trial, counsel only met with him one time, and appeared to know nothing about the case. Petitioner then contradicts himself by stating that counsel met with him another time prior to trail, to ask petitioner whether he was interested in pleading guilty. Petitioner does not provide any evidence, beyond his own conclusions, that counsel did not learn the facts of the case, adequately

review discovery, or prepare for trial, nor does he identify the "defense" that he believes was available to him that counsel should have asserted.

According to an affidavit executed by petitioner's trial counsel and submitted by the government, petitioner's trial counsel met with him several times in person, spoke with him via telephone, copied and forwarded all discovery matters to him, and "engaged in a thorough and comprehensive review of all the evidence in this case." (Doc. 14-1). Upon review of the trial transcript, it is clear that counsel vigorously represented his client in the face of the overwhelming evidence against him, as demonstrated by counsel's thorough cross-examination of witnesses, objections to evidence, and closing arguments.

Accordingly, petitioner has failed to provide any specific acts or omissions that would overcome this Court's presumption that counsel was effective, and has failed to show that counsel's assistance fell below an objective standard of reasonableness, or that he was prejudiced as a result. Petitioner has provided no basis for the Court to conclude that the result of the proceedings would have been different but for counsel's deficient performance. Petitioner's claim, on this basis, is **DENIED**.

## II.    Hearing

Petitioner has requested a hearing (Doc. 19). Because summary dismissal of a § 2255 motion is appropriate when the motion and the files and records of the case conclusively demonstrate that the petitioner is not entitled to relief, this Court **FINDS** that it is unnecessary to hold a hearing, and petitioner's request (Doc. 19) is **DENIED**. 28 U.S.C. § 2255(b) (2010), *see also, Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988).

### III. Certificate of Appealability

Should Petitioner desire to appeal this Court's ruling dismissing his motion under 28 U.S.C. § 2255, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but petitioner must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id*. at 338 (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate of appealability. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that petitioner has not stated any grounds for relief under § 2255. Furthermore, the Court finds no basis for a determination that its decision is debatable or incorrect. Thus, Petitioner has not made "a substantial showing of the denial of a constitutional right."

**IT IS THEREFORE ORDERED** that a certificate of appealability shall **NOT** be issued.

### CONCLUSION

Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED** on all grounds raised, and the petition is **DISMISSED WITH PREJUDICE.**

A certificate of appealability shall **NOT** be issued.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.


**IT IS SO ORDERED.**

**DATE:** **November 25, 2013**

                                        **/s/   WILLIAM D. STIEHL**
                                                **DISTRICT JUDGE**